Opinion
 

 MASTERSON, J.
 

 While driving home from work, one of defendant’s employees fell asleep and rear-ended another vehicle, killing its driver. The heirs of the deceased driver brought this action against the employer, alleging that it had acted negligently by subjecting the employee to excessive work hours and then allowing him to drive home in a state of exhaustion. The trial court granted summary judgment for the employer. We affirm on the ground that the employer’s conduct did not proximately cause the accident.
 

 Background
 

 In May 1994, Jeffery Stivers worked as a general manager at the Crocodile Cafe in Brea, California. On Sunday, May 15, 1994, at 1 a.m., Stivers was driving westbound on the Simi Valley Freeway near Haskell Avenue when he rear-ended a vehicle driven by Diane Depew. Depew died from the injuries she sustained in the accident.
 

 According to the police report, Stivers told the investigating officer that he had fallen asleep at the wheel after having worked a double shift on Friday, May 13, 1994, and a night shift on Saturday, May 14, 1994. As stated in the report: “Mr. Stivers . . . related to me at the scene, he was driving . . . W/B SR-118 at 55-60 mph. He was unsure of which lane he was in. He had entered the W/B SR-118 from the 1-210, and had been on his way home from work in Orange County. He had worked a double shift the day before
 
 *484
 
 and had just finished a regular work shift. He was very tired and caught himself dozing a couple of times. He thought he dozed off again, and when he looked up he saw [Depew’s vehicle] stopping in front of him. He did not have time to avoid striking [her car] and spun out after the impact. He stated several times T just fell asleep.’ ”
 

 In May 1995, Depew’s surviving heirs (her parents and son) filed this action against Stivers, Crocodile Enterprises, Inc. (the owner of the Crocodile Cafe), and the State of California. In September 1995, plaintiffs filed a first amended complaint. The amended pleading contained three causes of action. The first cause of action, for wrongful death, alleged that the State of California had failed to maintain and repair the Simi Valley Freeway, thereby creating a dangerous condition for motorists. The second cause of action, against Stivers, alleged that he had operated his vehicle in a negligent manner. The third cause of action, against Crocodile, alleged that the restaurant had required Stivers to work excessive hours and then allowed him to drive home in an exhausted condition, knowing that his commute exceeded 30 miles. Plaintiffs further alleged that Crocodile knew that employees who work overtime are more likely to become drowsy, fall asleep while driving home, and cause accidents. By requiring managers to work double shifts, Crocodile allegedly acted with reckless disregard for the welfare of other motorists on the highway. Crocodile was also faulted for not providing sleeping accommodations for employees who work double shifts.
 

 Crocodile filed an answer to the complaint. Discovery followed. Plaintiffs served Stivers with a deposition subpoena and obtained a court order compelling his attendance at the deposition. On November 18, 1996, Stivers appeared for his deposition. He refused to answer any questions, invoking his Fifth Amendment right against self-incrimination.
 
 [1]
 

 After Stivers’s deposition, Crocodile moved for summary judgment on the grounds that it had not breached a duty of care to Depew and that its conduct or omissions had not caused Depew’s injuries. The trial court granted the motion. Judgment was entered on April 21, 1997. Plaintiffs appeal from the judgment.
 
 [2]
 

 Discussion
 

 Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party
 
 *485
 
 is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)
 

 “ ‘A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant’s burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. ... In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. ... In making this determination, the moving party’s affidavits are strictly construed while those of the opposing party are liberally construed.’ . . . We accept as undisputed facts only those portions of the moving party’s evidence that are not contradicted by the opposing party’s evidence. ... In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true.”
 
 (A-H Plating, Inc.
 
 v.
 
 American National Fire Ins. Co.
 
 (1997) 57 Cal.App.4th 427, 433-434 [67 Cal.Rptr.2d 113], citations omitted.)
 

 In 1994, the Crocodile Cafe operated three shifts on Fridays and Saturdays: the “a.m.” shift, from 8:30 a.m. to 6 p.m.; the “mid” shift, starting between noon and 2 p.m. and ending at 11 p.m.; and the “p.m.” shift, from 6 p.m. to 2 a.m. In moving for summary judgment, Crocodile included in its “separate statement” (see Code Civ. Proc., § 437c, subd. (b)) the following fact: “Defendant Stivers told the investigating officers that he fell asleep at the wheel after having worked a double shift on Friday, May 13, 1994, and then a night shift on Saturday, May 14, 1994.” As support for this fact, Crocodile cited and attached the police report. In their opposition papers, plaintiffs agreed that this fact was undisputed. Accordingly, we assume that Stivers’s statement to the police was true: He worked a double shift on Friday, May 13, 1994—from 8:30 a.m. until 2 a.m.—and then the “p.m.” shift on Saturday, May 14, 1994—from 6 p.m. until around midnight.
 
 [3]
 
 We also assume that Stivers was exhausted after working the “p.m.” shift on May 14, 1994, and that he fell asleep at the wheel just before the accident.
 
 [4]
 

 Crocodile argues that this case is governed by the general rule that employers are not liable for the conduct of their employees while they are
 
 *486
 
 driving to and from work. Plaintiffs counter that this case falls within the “special risk” exception to the general rule. We agree with Crocodile.
 

 “An employer’s liability without fault for the acts of his employees is imposed by Civil Code section 2338, which provides in relevant part that ‘a principal is responsible to third [persons] for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, . . .’ This statute has long been held to reflect the common-law doctrine of respondeat superior.”
 
 (Childers
 
 v.
 
 Shasta Livestock Auction Yard, Inc.
 
 (1987) 190 Cal.App.3d 792, 800 [235' Cal.Rptr. 641]; accord,
 
 Otis Elevator Co.
 
 v.
 
 First Nat. Bank
 
 (1912) 163 Cal. 31, 39 [124 P.
 
 [5]
 

 “[U]nder the doctrine of respondeat superior, an employer is vicariously liable for torts committed by an employee within the scope of employment. . . . The doctrine is based upon a policy that an employer should be responsible for losses caused by the torts of its employees that occur in the conduct of the employer’s enterprise. . . . [¶] An employee is not considered to be acting within the scope of employment when going to or coming from his or her place of work. . . . This rule, known as the going-and-coming rule,[
 
 6
 
 ] has several exceptions. Generally, an exception to the going- and-coming rule will be found when the employer derives some incidental benefit from the employee’s trip.”
 
 (Anderson
 
 v.
 
 Pacific Gas & Electric Co.
 
 
 *487
 
 (1993) 14 Cal.App.4th 254, 258 [17 Cal.Rptr.2d 534], citations omitted; accord,
 
 Ducey
 
 v.
 
 Argo Sales Co.
 
 (1979) 25 Cal.3d 707, 722-723 [159 Cal.Rptr. 835, 602 P.2d 755].) “ ‘We are not here looking for the master’s fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. . . . Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise.’ ”
 
 (Hinman
 
 v.
 
 Westinghouse Elec. Co.
 
 (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988].)
 

 In a series of workers’ compensation cases, the courts have recognized an exception to the going-and-coming rule where “an employee suffers injury from a special risk causally related to employment.”
 
 (General Ins. Co.
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1976) 16 Cal.3d 595, 600 [128 Cal.Rptr. 417, 546 P.2d 1361]; accord,
 
 Santa Rosa Junior College
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 40 Cal.3d at pp. 353-354;
 
 Johnson
 
 v.
 
 Stratlaw, Inc.
 
 (1990) 224 Cal.App.3d 1156, 1160-1164 [274 Cal.Rptr. 363].) The “special risk” exception applies “(1) if ‘but for’ the employment the employee would not have been at the location where the injury occurred and (2) if ‘the risk is distinctive in nature or quantitatively greater than risks common to the public.’ ”
 
 (Parks
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1983) 33 Cal.3d 585, 590 [190 Cal.Rptr. 158, 660 P.2d 382].)
 
 [7]
 

 Of course, we cannot overlook the fact that the “special risk” exception to the going-and-coming rule is a creation of the workers’ compensation system. As far as we can tell, it has not been applied outside that context, i.e., to third party claims against an employer based on respondeat superior. (See
 
 Caldwell
 
 v.
 
 A.R.B., Inc.
 
 (1986) 176 Cal.App.3d 1028, 1035-1036 [222 Cal.Rptr. 494] [assuming, without deciding, that “special risk” exception” applies to third party claims against employer]; Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 1997) ¶ 2:319, p. 2-93, rev. 1, 1997 [“. . . the only known cases to apply this [‘special risk’] theory to date have been in the
 
 workers’ compensation (not
 
 respondeat superior) context” (italics in original)].)
 

 As one Court of Appeal has cautioned: “Workers’ compensation law takes a different approach to exceptions to the going-and-coming rule .... [¶] . . . [W]orkers’ compensation cases are not controlling with respect to exceptions to the going-and-coming rule in cases involving respondeat superior. . . . Workers’ compensation and respondeat superior law are
 
 *488
 
 driven in opposite directions based on differing policy considerations. Workers’ compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee’s fault because of the special relationship. . . . Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers’ compensation cases which are not present in respondeat superior law.”
 
 (Blackman
 
 v.
 
 Great American First Savings Bank
 
 (1991) 233 Cal.App.3d 598, 604-605 [284 Cal.Rptr. 491], citations omitted; accord,
 
 Anderson
 
 v.
 
 Pacific Gas & Electric Co., supra,
 
 14 Cal.App.4th at p. 259; see also
 
 Perez
 
 v.
 
 Van Groningen & Sons, Inc.
 
 (1986) 41 Cal.3d 962, 967, fn. 2 [227 Cal.Rptr. 106, 719 P.2d 676] [workers’ compensation cases not controlling when liability predicated on respondeat superior principles];
 
 Bailey
 
 v.
 
 Filco, Inc., supra,
 
 48 Cal.App.4th atp. 1562 [same];
 
 Wank v. Rickman & Garrett
 
 (1985) 165 Cal.App.3d 1103, 1110-1111 [211 Cal.Rptr. 919] [distinguishing between “course of employment” test used in workers’ compensation cases and more narrow “scope of employment” test used under respondeat superior doctrine].)
 
 [8]
 

 In any event, assuming that the “special risk” exception applies to the going-and-coming rule for purposes of respondeat superior, a plaintiff must establish a causal nexus between his injury and the employee’s job. Our Supreme Court has indicated that, even when the “special risk” exception applies in the workers’ compensation area, there must be a “causal relationship between the accident and the employment.”
 
 (General Ins. Co.
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 16 Cal.3d at p. 600; accord,
 
 Santa Rosa Junior College
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 40 Cal.3d at pp. 353-354.)
 

 Moreover, in discussing causation in the respondeat superior context, the high court has stated: “The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from ‘but for’ causation. That the employment brought tortfeasor and victim together in time and place is not enough. We have used
 
 *489
 
 varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an ‘outgrowth’ of the employment. . . ; the risk of tortious injury must be ‘ “inherent in the working environment” ’ ... or ‘ “typical of or broadly incidental to the enterprise [the employer] has undertaken.” ’ . . . [¶] . . . California courts have also asked whether the tort was, in a general way, foreseeable from the employee’s duties. Respondeat superior liability should apply only to the types of injuries that ‘ “as a practical matter are sure to occur in the conduct of the employer’s enterprise.” ’ . . . [¶] . . . [T]he tortious occurrence must be ‘a generally foreseeable consequence of the activity.’ In this usage, . . . foreseeability ‘merely means that in the context of the particular enterprise an employee’s conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer’s business.’ ”
 
 (.Lisa M.
 
 v.
 
 Henry Mayo Newhall Memorial Hospital
 
 (1995) 12 Cal.4th 291, 298-299 [48 Cal.Rptr.2d 510, 907 P.2d 358], citations and fn. omitted (hereafter
 
 Lisa M.).)
 

 [9]
 

 “Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when ‘the facts are undisputed and no conflicting inferences are possible.’ ”
 
 (Mary M.
 
 v.
 
 City of Los Angeles
 
 (1991) 54 Cal.3d 202, 213 [285 Cal.Rptr. 99, 814 P.2d 1341].) In this case, the material facts are undisputed and there are no conflicting inferences. We therefore treat the question of Crocodile’s liability as one of law.
 

 Stivers worked two full shifts on May 13, 1994 (from 8:30 a.m. on May 13 to 2 a.m. on May 14) and returned to work at 6 p.m. on May 14, 1994, for the “p.m.” shift. Thus, he worked 17.5 consecutive hours beginning on May 13; he then had 16 hours off; he returned to work on May 14 for the “p.m.” shift; he worked approximately 6 hours; he left the restaurant around midnight and began driving home; and the accident occurred 1 hour later.
 

 We conclude that Stivers’s work schedule did not create a “special risk” that he would injure or kill someone by falling asleep while driving home. Put another way, there was an insufficient causal nexus between Stivers’s employment and Depew’s death. After working 17.5 hours on May 13, Stivers had 16 hours before he had to be back at work. Upon returning to
 
 *490
 
 work on May 14, he put in only six hours before driving home. As we see it, a break of 16 hours between shifts, followed by 6 hours of work, is not the type of excessive workload that makes falling asleep at the wheel and killing another driver “a generally foreseeable consequence” of operating a restaurant.
 
 (Lisa M., supra,
 
 12 Cal.4th at p. 299.) This type of accident was not the “ ‘. . .
 
 inevitable
 
 toll of a lawful enterprise.’ ”
 
 (Hinman
 
 v.
 
 Westinghouse Elec. Co., supra,
 
 2 Cal.3d at p. 960, italics added.) Nor did Depew’s death fall into the category of “injuries that ‘ “as a practical matter are sure to occur in the [restaurant business].” ’ ”
 
 (Lisa M., supra,
 
 12 Cal.4th at p. 299.)
 

 “The question is not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed. The employment must be such as
 
 predictably
 
 to create the risk employees will commit. . . torts
 
 of the type for which liability is sought.” (Lisa M., supra,
 
 12 Cal.4th at p. 302, italics added.) In this case, neither the nature of Stivers’s job nor the hours he worked made it predictable that he would fall asleep at the wheel and cause a fatal car accident. Given “ ‘the context of the particular enterprise’ ”
 
 (id.
 
 at p. 299), we find that Stivers’s conduct was so unusual that it would be “ ‘unfair to include the loss resulting from [that conduct] among [the] other costs of the employer’s business.’ ”
 
 (Ibid.)
 

 Indeed, in light of Stivers’s 16-hour break between shifts, he “should be charged with the ability to manage his time in accord with the nature of his job. . . . The employer had every reason to assume that the employee, upon reporting to work, had received sufficient rest in the previous [16] hours, just as an employer whose employees report to work on Monday morning has every right to assume that those employees received sufficient rest over the weekend.” (Note,
 
 Wherein Lies the Duty? Determining Employer Liability for the Actions of Fatigued Employees Commuting From Work
 
 (1994) 42 Wayne L. Rev. 2091, 2098-2099, fn. 31.) To the extent Stivers was too tired to drive home without causing a fatal crash, his condition was neither an “outgrowth” of his employment nor “ ‘ “inherent in the working environment.” ’ ”
 
 (Lisa M. , supra,
 
 12 Cal.4th at p. 298.) Further, such extreme fatigue is not “ ‘ “typical of or broadly incidental to the enterprise” ’ ” of operating a restaurant.
 
 (Ibid.)
 

 [10]
 

 Accordingly, we conclude that this case does not fall within the “special risk” exception to the going-and-coming
 
 [11]
 

 Our conclusion finds support in the decisions of other courts. For instance, in
 
 Van Devander
 
 v.
 
 Heller Electric Co.
 
 (D.C. Cir. 1968) 405 F.2d 1108 [132
 
 *491
 
 App.D.C. 40], the court of appeals found that, for workers’ compensation purposes, an employee had been injured within the course of his employment where he had worked 26 continuous hours and, within 20 minutes of leaving work, suffered injuries after falling asleep at the wheel of his car. As then-Judge Warren Burger wrote for the court: “An important step in cases of employment-related injuries is to scrutinize the factual setting to determine whether there is a direct and positive causal connection between the employment and the injury. What is required to bring the claimant within the ambit of the [workers’ compensation] statute is ‘continuity of cause . . . combined with continuity in time and space [¶] . . . An examination of the ‘coming and going’ cases discloses that the denial of compensation is predicated upon a finding that ‘ordinarily the hazards [the employees] encounter in such journeys are not incident to the employer’s business.’ . . . This speaks to the
 
 ordinary,
 
 the usual, the normal, the routine hazards which would attend travel between any two points rather than unusual hazards arising out of the foreseeable and abnormal consequences of requiring an employee to remain at his work for 26 hours. Where the hazard of the journey, as here, ‘arises’ out of and in the course of extraordinary demands of employment there is a discernible causal relationship upon which to justify the [workers’ compensation] tribunal in attributing the hazard to the employment and hence responsibility for the resultant injury. Continuous work assignment by the employer of this employee for 26 hours was an extraordinary demand and foreseeably exposed the employee to the kind of risk which led to his injury.”
 
 (Id.
 
 at p. 1110, citations and fns. omitted, italics in original.)
 

 Similarly, in
 
 Snowbarger
 
 v.
 
 Tri-County Elec. Co-op.
 
 (Mo. 1990) 793 S.W.2d 348, 350, the court held that an employee was within the course of his employment for workers’ compensation purposes where, after working in an ice storm for 86 hours of a 100.5-hour period, he fell asleep while driving home and died in an accident. The court commented that “. . . the employer in this case more than acquiesced in causing the condition of complete fatigue owing to the draining and grueling overtime hours spent in manual labor in extreme cold.”
 
 (Id.
 
 at p. 350; see also
 
 Robertson
 
 v.
 
 LeMaster, supra,
 
 171 W.Va. at p. 612 [301 S.E.2d at p. 568] [the employer “could have reasonably foreseen that its exhausted employee, who had been required to work over 27 hours without rest, would pose a risk of harm to other motorists while driving the 50 miles from the . . . office to his home”].)
 

 In
 
 Pappas
 
 v.
 
 Sports Services, Inc.
 
 (1976) 68 Mich.App. 423 [243 N.W.2d 10], the employee typically worked an eight-hour day. On one occasion, he
 
 *492
 
 put in seven hours of overtime, for a total of fifteen hours. While driving home, he fell asleep, ran into a highway abutment, and sustained extensive injuries. In finding that the employee was not entitled to workers’ compensation benefits, the court stated: “All that [the employer] required of plaintiff was overtime work; we do not believe that this amount of overtime work was so great as to increase substantially plaintiff’s fatigue. . . .” “[W]e do not view this [amount of work] as likely to cause a hazardous trip home.” (68 Mich.App. at p. 432 & fn. 7 [243 N.W.2d at p. 15 & fn. 7].)
 

 These authorities, like the California cases, recognize that, as a prerequisite to an award of compensation or damages, there must be a causal nexus between the .employer’s work demands and the injury to an employee or third party. A causal relationship was present in
 
 Van Devander
 
 and
 
 Snow-bar ger
 
 because of the employers’ extraordinary demands and grueling overtime requirements. In those cases, the employees worked at least 26 hours before driving home. In contrast, a causal nexus was lacking in
 
 Pappas
 
 because the amount of time worked (15 hours) was not “likely to cause a hazardous trip home.” (68 Mich.App. at p. 432, fn. 7 [243 N.W.2d at p. 15, fn. 7].) By the same token, Stivers’s work schedule was not so extraordinarily demanding or grueling as to make Crocodile liable for a fatal car crash.
 
 [12]
 

 Our analysis is consistent with
 
 Johnson
 
 v.
 
 Stratlaw, Inc., supra,
 
 224 Cal.App.3d 1156. In that case, a father and son (Daryl) worked at the same restaurant. One Friday, Daryl, a minor, worked from 5 p.m. until 2 a.m. Upon finishing work, Daryl got into his car and began driving home. His father, who had also worked that day, left for home at the same time, driving his own vehicle and taking a different route. Although Daryl’s father made it home safely, Daryl was involved in a fatal, single-car accident. Daryl’s parents then brought suit against the restaurant owner for wrongful death and negligent infliction of emotional distress. The complaint alleged that the defendant had “ ‘negligently and carelessly requir[ed] the decedent to work
 
 *493
 
 until after 2:00 a.m. and for a period in excess of eight hours, in violation of Labor Code § 1391 ....”’ (224 Cal.App.3d at p. 1159.)
 
 [13]
 

 In finding that Daryl was acting within the course of his employment while driving home (and that workers’ compensation provided the exclusive remedy for his death), the court applied the “special risk” exception to the going-and-coming rule, stating: “Plaintiffs charged [that] defendant violated Labor Code section 1391 in requiring their son to work until after 2 a.m. on a nonschool day, thereby causing Daryl to become tired and involved in an automobile accident. These pleadings allege a special risk: Daryl, a minor, was in an accident because he became tired
 
 after being kept at work by defendant long past the legal hours.”
 
 (224 Cal.App.3d at p. 1163, italics added.) The court made clear that the employer had created a “special risk” by violating the statutory restriction on the work hours of minors.
 
 (Id.
 
 at p. 1163, fn. 4.) In that regard, the court explained that if Daryl’s father had been killed while driving home, he would not have been covered by the “special risk” exception because he was not a minor.
 
 (Ibid.)
 

 Like the father in
 
 Johnson,
 
 Stivers had a work schedule that did not violate any statutorily imposed limitation on work hours. Consequently, the principles applied in
 
 Johnson
 
 do not support plaintiffs’ contention that Stivers’s employment created a “special risk” of injury.
 

 In sum, Stivers’s commute home after working the “p.m.” shift on May 14, 1994, falls within the going-and-coming rule. The causation requirements of the “special risk” exception have not been satisfied. It follows that the trial court properly granted summary judgment in Crocodile’s favor.
 
 [14]
 

 
 *494
 
 Disposition
 

 The judgment is affirmed.
 

 Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.
 

 [1]
 

 The police had recommended that Stivers be prosecuted for vehicular manslaughter (Pen. Code, § 192, subd. (c)) and driving at an unsafe speed (Veh. Code, § 22350).
 

 [2]
 

 Plaintiffs filed their notice of appeal after the trial court issued an order granting the motion but before the entry of judgment. We treat the appeal as being from the judgment. (See Cal. Rules of Court, rule 2(c);
 
 Avila
 
 v.
 
 Standard Oil Co.
 
 (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314].)
 

 [3]
 

 As stated, the “p.m.” shift ended at 2 a.m. However, it is undisputed that the accident occurred at 1 a.m. It would have taken Stivers approximately one hour to drive from the restaurant to the location of the accident. Consequently, assuming that Stivers worked the “p.m.” shift on May 14, he must have left work about two hours early.
 

 [4]
 

 In making these assumptions, we find it unnecessary to resolve other issues raised by the parties. For instance, although the parties agree that Stivers worked only one shift on May 14, Crocodile contends that he worked the “a.m." shift (and thus lied to the police), while
 
 *486
 
 plaintiffs assert that Stivers truthfully told the police he had worked the “p.m.” shift. Further, Crocodile argues that Stivers’s statements to the police, as reflected in the police report, are inadmissible on hearsay grounds, while plaintiffs contend that they are admissible (see Evid. Code, §§ 1200, 1230, 1280;
 
 People
 
 v.
 
 Gordon
 
 (1990) 50 Cal.3d 1223, 1248-1253 [270 Cal.Rptr. 451, 792 P.2d 251]). For purposes of appeal, we assume that plaintiffs’ contentions are correct.
 

 [5]
 

 In the first amended complaint, plaintiffs alleged that Crocodile had acted negligently by overworking Stivers and then allowing him to drive home in a state of exhaustion. However, in the trial court and on appeal, plaintiffs argue that Crocodile is liable under respondeat superior; they have not argued that liability may be based on Crocodile’s negligence. Because respondeat superior and negligence are distinct theories of liability (see, e.g.,
 
 Farmers Ins. Group
 
 v.
 
 County of Santa Clara
 
 (1995) 11 Cal.4th 992,1009-1010, 1011 [47 Cal.Rptr.2d 478, 906 P.2d 440];
 
 Bailey
 
 v.
 
 Filco, Inc.
 
 (1996) 48 Cal.App.4th 1552, 1559 [56 Cal.Rptr.2d 333];
 
 Kimberly M.
 
 v.
 
 Los Angeles Unified School Dist.
 
 (1989) 215 Cal.App.3d 545, 547-548 & 548, fn. 3 [263 Cal.Rptr. 612]), and because plaintiffs have limited the basis of Crocodile’s liability to respondeat superior, we will not discuss whether liability might be appropriate under a negligence theory.
 

 [6]
 

 The rule is predicated on the notion that “ ‘an employee going to and from his place of employment is not rendering any service [to the employer], and begins to render service only when [arriving at the place of employment].’ . . . The rule has also been explained on the theory that ‘ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work.’ ”
 
 (Santa Rosa Junior College
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1985) 40 Cal.3d 345, 352 [220 Cal.Rptr. 94, 708 P.2d 673], citation omitted.)
 

 [7]
 

 “The going and coming rule and its many exceptions are all ‘arbitrary’—judicial responses to the practical necessity of establishing guidelines for use in determining whether a worker’s injury arose out of and in the course of employment.”
 
 (Santa Rosa Junior College
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 40 Cal.3d at p. 356, fn. 16.)
 

 [8]
 

 Plainly, workers’ compensation and respondeat superior raise different considerations as to whether the injured party is entitled to relief. By way of example, in
 
 Pacific Indent. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1946) 28 Cal.2d 329 '[170 P.2d 18] and
 
 Greydanus
 
 v.
 
 Industrial Acc. Com.
 
 (1965) 63 Cal.2d 490 [47 Cal.Rptr. 384, 407 P.2d 296], the employees had to make a left turn on a public street to enter the employers’ premises. The employees were injured in collisions while turning left. In both cases, the Supreme Court held that the left turn was a “special risk” of employment, such that the employees were entitled to workers’ compensation benefits. (See
 
 General Ins. Co.
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 16 Cal.3d at p. 600 [discussing cases].) In contrast, the question under respondeat superior would be whether the employer is liable to the third party—the nonemployee occupant of the other car—based on the employee’s negligence in making the left turn. Apparently, the courts have not answered that question.
 

 [9]
 

 Although
 
 Lisa M.
 
 concerned employer liability for an employee’s
 
 intentional
 
 misconduct, cases involving an employee’s negligence also require a causal nexus between the work and the injury. (See, e.g.,
 
 Hinman
 
 v.
 
 Westinghou.se Elec. Co., supra,
 
 2 Cal.3d at pp. 959-962;
 
 Perez
 
 v.
 
 Van Groningen & Sons, Inc., supra,
 
 41 Cal.3d at pp. 967-968;
 
 Bailey
 
 v.
 
 Pilco, Inc., supra,
 
 48 Cal.App.4th at pp. 1558-1561;
 
 Childers
 
 v.
 
 Shasta Livestock Auction Yard, Inc., supra,
 
 190 Cal.App.3d at pp. 800-805, 810.)
 

 [10]
 

 Because the accident was not foreseeable for purposes of respondeat superior, it is immaterial that, as alleged in the first amended complaint, Crocodile did not provide Stivers with sleeping accommodations after his six-hour shift on May 14, 1994.
 

 [11]
 

 We express no opinion as to what circumstances, if any, would expose an employer to liability where an employee’s fatigue results in injury to a third party. We note, however, that the Texas Court of Appeals has rejected such liability (see
 
 Jenkins
 
 v.
 
 Kemlon Prod. & Development Co.
 
 (Tex.Ct.App. 1996) 923 S.W.2d 224, 227), while the West Virginia Su
 
 *491
 
 preme Court of Appeals has recognized it (see
 
 Robertson
 
 v.
 
 LeMaster
 
 (1983) 171 W.Va. 607 [301 S.E.2d 563]).
 

 [12]
 

 The first amended complaint alleged that the accident was caused by Stivers’s fatigue
 
 and
 
 his consumption of alcoholic beverages on the job. Depending upon the circumstances, an employer may be liable under respondeat superior for injuries caused by an intoxicated employee. (See
 
 Childers
 
 v.
 
 Shasta Livestock Auction Yard, Inc., supra,
 
 190 Cal.App.3d at pp. 802-806.) However, in opposing summary judgment, plaintiffs did not argue that Crocodile’s liability was premised, even in part, on Stivers’s consumption of alcoholic beverages. Nor have they raised the issue on appeal. We therefore consider it abandoned. (See
 
 North Coast Business Park
 
 v.
 
 Nielsen Construction Co.
 
 (1993) 17 Cal.App.4th 22, 28-30 [21 Cal.Rptr.2d 104];
 
 MST Farms
 
 v. C.
 
 G. 1464
 
 (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72].)
 

 [13]
 

 When
 
 Johnson
 
 was decided, Labor Code section 1391 provided: “[N]o minor shall be employed more than eight hours in one day of 24 hours or more than 48 hours in one week, or before five o’clock in the morning, or after 10 o’clock in the evening on any day preceding a schoolday. However, a minor may work the hours authorized by this section during any evening preceding a nonschoolday until 12:30 in the morning of the nonschoolday.” (Lab. Code, § 1391, subd. (a), added by Stats. 1937, ch. 90, § 1391, p. 224, as amended by Stats. 1989, ch. 66, § 1, p. 176; see
 
 Johnson
 
 v.
 
 Stratlaw, Inc., supra,
 
 224 Cal.App.3d at p. 1159, fn. 1.)
 

 [14]
 

 In the trial court, plaintiffs sought to continue the hearing on the summary judgment motion for seven months so they could redepose Stivers after the statute of limitations had run on any crimes arising out of the accident (when he presumably could not invoke the Fifth Amendment). The trial court denied the request. Although a continuance may be necessary where “facts essential to justify opposition exist but cannot, for reasons stated, then be presented” (Code Civ. Proc., § 437c, subd. (h)), that was not the situation here. Plaintiffs wanted to redepose Stivers to obtain testimony that would have merely corroborated other evidence already before the court. Such cumulative evidence was not “essential.”
 
 (Ibid.)
 
 Plaintiffs also wanted Stivers’s testimony about Crocodile’s alleged refusal to transfer him to a restaurant closer to home. However, plaintiffs could have attempted to obtain that informa
 
 *494
 
 tion through other means (e.g., by serving Crocodile with interrogatories). Plaintiffs’ inability to get the desired information from Stivers did not warrant a continuance, absent a showing that they could not obtain it from other sources that were easily accessible and likely to have it. (See
 
 A & B Painting & Drywall, Inc.
 
 v.
 
 Superior Court
 
 (1994) 25 Cal.App.4th 349, 356-357 [30 Cal.Rptr.2d 418];
 
 Wachs
 
 v.
 
 Curry
 
 (1993) 13 Cal.App.4th 616, 624 [16 Cal.Rptr.2d 496].)