Filed 3/30/22

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUCY R. FELTHAM et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> UNIVERSAL PROTECTION <br> SERVICE, LP, <br><br>     Defendant and Respondent. | A161190 <br><br><br> (Alameda County <br> Super. Ct. No. RG18892902) |

    While driving home from her job as a hospital security guard, Clanisha J. Villegas crossed into oncoming traffic and hit — and seriously injured — Lucy R. Feltham. Feltham and her husband, Mathieu A. Leonelli, (collectively, plaintiffs) filed a lawsuit alleging Villegas's employer, Universal Protection Service, LP, erroneously sued as Allied Universal Corporation (Allied), was liable for Villegas's negligence. The trial court granted Allied's summary judgment motion. It concluded Allied was entitled to judgment as a matter of law because Villegas was not acting within the course and scope of her employment at the time of the accident, and the accident was not a foreseeable consequence of Villegas's employment. We affirm.

---

    * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, part II.

1

# BACKGROUND

Allied provided security guard services at several University of California, San Francisco (UCSF) medical facilities. Allied hired security guards and assigned them to a particular location. UCSF was responsible for supervising the security guards.

Villegas worked for Allied from approximately February 2015 to May 2016. Thereafter, she had a baby. In 2017, Villegas reapplied for a security guard position and requested the overnight shift. During her job interview, Villegas disclosed that she did not have daytime childcare for her infant, who was then eight months old. The interviewer did not ask Villegas to describe her daytime activities; the interviewer believed asking such a question was illegal.

Allied hired Villegas and assigned her to work the overnight shift — from 11:00 p.m. to 7:00 a.m. — five nights per week. Villegas worked at the Mission Bay and Parnassus Street facilities. Allied did not require Villegas to use her car for work and did not dictate how she traveled to and from work. Using Villegas's personal vehicle, Villegas's mother often drove Villegas from their shared home in the East Bay to UCSF and picked Villegas up when Villegas's shift ended. After dropping her mother off at work in the Inner Richmond neighborhood, Villegas drove home.

Villegas's first shift was on July 10, 2017. She frequently requested extra shifts and often worked six shifts per week rather than five. On August 21, Villegas began her fourth straight day of work. When her shift ended the following morning, Villegas's mother picked Villegas up. Villegas dropped her mother off at work, then began driving home. About an hour after finishing her shift, and as she neared her home, Villegas fell asleep and drove into oncoming traffic, hitting and severely injuring Feltham, who was riding

2

a motorcycle. Feltham's husband — who was also riding a motorcycle — witnessed the accident.

## I.

Plaintiffs filed a complaint against Allied and others, alleging claims for motor vehicle negligence, third party negligence, negligent infliction of emotional distress, and loss of consortium. In their third party negligence cause of action, plaintiffs alleged Allied, as Villegas's employer, negligently "required" and "allowed" Villegas "to work excessive hours so as to fatigue and tire her to the point of her falling asleep at the wheel in the course and scope of her employment." Plaintiffs further alleged Allied negligently "failed to provide transportation" for Villegas, who fell asleep while driving in the "course and scope of her employment," thereby causing the collision and Feltham's injuries.[1]

Allied moved for summary judgment. It argued the "going and coming" rule — which holds that an employer is not vicariously liable for torts committed by an employee commuting to or from work — barred liability. (See *Depew v. Crocodile Enterprises, Inc.* (1998) 63 Cal.App.4th 480, 486–487 (*Depew*).) Allied disclaimed application of the "special risk" exception to the going and coming rule, asserting there was no causal connection between Villegas's work and the accident such as, for example, that Allied caused Villegas to work excessive hours, that Villegas's work schedule caused her to be fatigued, or that Allied was aware of Villegas's purported fatigue. (*Id.* at pp. 488–490.)

In opposition, plaintiffs argued Villegas was within the scope of her employment at the time of the accident; they also urged the trial court to

---

[1] Plaintiffs do not challenge the grant of summary judgment as to their claims for negligent infliction of emotional distress and loss of consortium.

apply an exception to the going and coming rule. In the alternative, plaintiffs asserted — for the first time — that Allied negligently hired and supervised Villegas and that such "independent" negligence was a substantial factor in causing Feltham's injuries. According to plaintiffs, Allied should not have hired Villegas to work the overnight shift because it knew "she had daytime obligations that would keep her from sleeping." Plaintiffs maintained that Allied negligently supervised Villegas by assigning her "additional shifts on her days off, leaving her with minimal time to catch up on sleep," and by failing "to implement countermeasures to combat chronic fatigue and mitigate [Villegas's] sleep deprivation."

Plaintiffs offered two supporting declarations, one from Thomas Roth, and another from Randy Stedman. Roth — a specialist on "sleep and sleep disorders" — averred Allied knew or should have known Villegas, a new mother with no daytime childcare, "most likely would not have adequate sleep to perform [her job] or to safely get back and forth to work" if she drove. Roth also opined that working overnight, and working an extra shift per week, were "each a substantial factor in causing the subject collision." According to Roth, Villegas's "sleep debt" was akin to driving with a .10 percent blood alcohol level. Roth faulted Allied for not taking measures to mitigate its employees' sleep deprivation problems. Stedman, a "Human Resources professional," offered similar testimony. He opined Allied was negligent for failing to mitigate (or attempt to mitigate) Villegas's "sleep debt," and that the car accident was a foreseeable consequence of that negligence.

In reply, Allied emphasized the lack of a causal connection between Villegas's employment and the accident and argued any fatigue experienced by Villegas was due to her childcare responsibilities, "which have nothing to

4

do with her work as a security guard for Allied."  Allied also urged the court to reject plaintiffs' "direct" negligence theory of liability.

## II.

The trial court granted Allied's summary judgment motion.  It concluded Allied was exempt from liability under the going and coming rule based on undisputed evidence that at the time of the accident, Villegas had finished her shift and was on her way home.  The court declined to apply the special risk exception, concluding there was "no evidence that Allied caused Villegas to work excessive hours or that her schedule caused her to be fatigued."  Villegas — the court observed — had "sixteen hours off work before she returned to work a normal shift of eight hours."  The court acknowledged Villegas worked the overnight shift but observed that she "was never called upon to work a double shift.  Although Villegas sometimes worked six days a week, the evidence . . . shows that Villegas routinely had sixteen hours off in a twenty-four hour day.  A reasonable trier of fact could not find that the accident was a foreseeable consequence of Villegas' employment."

The trial court also rejected plaintiffs' contention that Allied "was liable because [it] knew that Villegas was a new mother and knew or should have known Villegas would not get adequate rest during her off hours."  The court determined Stedman's declaration did not create a triable issue as to whether Allied was liable for negligent hiring; as the court explained, Stedman's declaration established it was Villegas's childcare "duties – not her employment – that led to Villegas' fatigue."

The trial court entered judgment for Allied.

5

## DISCUSSION

"On appeal from the grant of summary judgment, we review the record de novo and apply the same standard as did the trial court. We identify the issues framed by the pleadings and then determine whether ' " 'the moving party's showing has established facts which justify a judgment in movant's favor' " ' on those issues. [Citation.] If the moving party has made that showing, we then determine whether the opposition has demonstrated ' " 'the existence of a triable, material factual issue.' " ' [Citation.] In making that determination, we keep in mind that the party opposing the motion is entitled to have any reasonable inferences from the facts drawn in its favor." (*Bingener v. City of Los Angeles* (2019) 44 Cal.App.5th 134, 140 (*Bingener*).)

### I.

Plaintiffs challenge the trial court's conclusion that Allied was entitled to judgment as a matter of law on their third party negligence claim. We are not persuaded.

"Under the doctrine of respondeat superior, an employer is liable for the torts of its employees committed within the scope of their employment. [Citation.] The burden of proof is on the plaintiff to demonstrate that the negligent act was committed within the scope of employment. [Citation.] But where, as here, the facts relating to the applicability of the doctrine are undisputed, the question of its application is one of law. [Citations.] [¶] The doctrine is based upon a policy that the employer should be responsible for losses caused by the torts of its employees that occur in the conduct of the employer's enterprise." (*Bingener*, *supra*, 44 Cal.App.5th at pp. 140–141; *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296.)

6

An employee "is generally *not* considered to be acting within the scope of [her] employment when going to or coming from . . . her regular place of work." (*Bingener*, *supra*, 44 Cal.App.5th at p. 141, italics added.) Under this rule — known as the going and coming rule — " ' "employers are generally exempt from liability for tortious acts committed by employees while on their way to and from work because employees are said to be outside of the course and scope of employment during their daily commute." ' " (*Lynn v. Tatitlek Support Services, Inc.* (2017) 8 Cal.App.5th 1096, 1106 (*Lynn*).) The theory behind the going and coming rule is that the employment relationship is suspended from the time the employee leaves work until she returns or, put another way, that in commuting, the employee is not rendering service to the employer. (*Sumrall v. Modern Alloys, Inc.* (2017) 10 Cal.App.5th 961, 968.) "Normally the going and coming rule applies in cases where an employee ordinarily works at a particular location and the job duties do not ordinarily include driving on the job." (*Lynn*, at p. 1106.)

The going and coming rule applies here. The undisputed evidence demonstrates Villegas did not use her car for work, and she was not acting within the course and scope of her employment at the time of the accident, which occurred well after Villegas finished her shift and while she was driving home in her personal vehicle. (*Bingener*, *supra*, 44 Cal.App.5th at p. 142 [going and coming rule applied when accident occurred while employee was on "normal morning commute" in his personal car]; *Newland v. County of Los Angeles* (2018) 24 Cal.App.5th 676, 684 [employer not liable for accident during employee's commute; there was "no evidence" the employee was "within the course and scope of his employment when the accident occurred"]; *Lynn*, *supra*, 8 Cal.App.5th at p. 1108 [going and coming rule precluded

7

liability when collision occurred during employee's commute in his "personal vehicle"].)

Plaintiffs insist Villegas's conduct nonetheless fits within the special risk exception to the going and coming rule. That exception " 'applies when an employee endangers others with a risk arising from or related to work.' " (*Lynn*, *supra*, 8 Cal.App.5th at pp. 1112–1113.) The rationale behind the special risk exception is that "[w]here the risk of injury is created by the enterprise, within the scope of the employee's employment, and it proximately causes the injury, the cost of injury" is properly "imposed upon the enterprise." (*Id.* at p. 1113; *Bingener*, *supra*, 44 Cal.App.5th at p. 141.)

To invoke the special risk exception, the "plaintiff must establish a causal nexus between [her] injury and the employee's job." (*Depew*, *supra*, 63 Cal.App.4th at p. 488.) Put another way, the special risk exception "applies '(1) if "but for" the employment the employee would not have been at the location where the injury occurred and (2) if "the risk is distinctive in nature or quantitatively greater than risks common to the public." ' " (*Id.* at p. 487; *Lynn*, *supra*, 8 Cal.App.5th at p. 1113 [courts consider whether the injury was a generally foreseeable consequence of the job-related hazard or activity].)

*Depew* is instructive. There, a restaurant employee fell asleep while driving home from work and caused a fatal car accident. (*Depew*, *supra*, 63 Cal.App.4th at pp. 483–484.) The heirs of the deceased driver sued the employer, "alleging that it had acted negligently by subjecting the employee to excessive work hours and then allowing him to drive home in a state of exhaustion." (*Id.* at p. 483.) In affirming the trial court's grant of summary judgment for the employer, the *Depew* court declined to apply the special risk exception, holding the employee's work schedule "did not create a 'special

8

risk' that he would injure or kill someone by falling asleep while driving home." (*Id.* at p. 489.) *Depew* observed that after working 17.5 hours, the employee had 16 hours off before he returned to work, where "he put in only six hours before driving home. As we see it, a break of 16 hours between shifts, followed by 6 hours of work, is not the type of excessive workload that makes falling asleep at the wheel and killing another driver 'a generally foreseeable consequence' of operating a restaurant." (*Id.* at pp. 489–490.)

*Depew* held the accident was not an inevitable result of operating a restaurant and cautioned that the question was " 'not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed. The employment must be such as *predictably* to create the risk employees will commit . . . torts *of the type for which liability is sought.*' " (*Depew, supra*, 63 Cal.App.4th at p. 490.) *Depew* reasoned that "neither the nature of [the employee]'s job nor the hours he worked made it predictable that he would fall asleep at the wheel and cause a fatal car accident," and concluded that to the extent the employee "was too tired to drive home without causing a fatal crash, his condition was neither an 'outgrowth' of his employment nor ' " 'inherent in the working environment.' " ' [Citation.] Further, such extreme fatigue is not ' " 'typical of or broadly incidental to the enterprise' " ' of operating a restaurant. [Citation.] Accordingly, we conclude that this case does not fall within the 'special risk' exception to the going-and-coming rule." (*Ibid.*, fns. omitted.)

*Lynn* is also on point. There, a temporary employee who worked long hours for a company providing support services for "realistic military predeployment training" at military bases — 63 hours over a three-day period — caused a fatal automobile accident on his "lengthy commute home" from the remote jobsite. (*Lynn, supra*, 8 Cal.App.5th at pp. 1100, 1112.)

9

Though the "work was stressful and could be physically and mentally demanding," employees received a break of at least seven hours each evening before resuming work the next day.  (*Id.* at pp. 1112, 1114.)  In urging the trial court to apply the special risk exception, plaintiffs offered evidence that the employee was "exhausted and sleep deprived" when he began driving home.  (*Id.* at pp. 1104, 1112.)  The trial court declined to apply the exception, and the appellate court affirmed.  (*Id.* at pp. 1112, 1115.)

The *Lynn* court held that application of the special risk exception required "evidence the employee's fatigue was caused by an *excessive workload*, making falling asleep while driving a foreseeable consequence of the employee's job."  (*Lynn*, *supra*, 8 Cal.App.5th at p. 1115, italics added.)  Pointing to the lack of evidence that fatigue from the employee's working conditions proximately caused the accident, and the absence of evidence that the employee was unfit to drive because of fatigue, *Lynn* concluded there "was an insufficient nexus between [the] employment and the accident as a matter of law.  The trial court therefore properly rejected the special risk exception to the going and coming rule."  (*Ibid.*)

So too here.  Villegas worked a regular eight-hour shift before the accident; before starting that shift, she had 16 hours off.  Allied " 'had every reason to assume that [Villegas], upon reporting to work had received sufficient rest' " during her time off.  (*Depew*, *supra*, 63 Cal.App.4th at p. 490.)  Neither the nature of Villegas's job as a security guard, nor her schedule working the overnight shift, created "a 'special risk' that [she] would injure or kill someone by falling asleep while driving home."  (*Id.* at p. 489.)  There was no evidence that "employer-caused" fatigue was a proximate cause of the traffic accident.  (*Lynn*, *supra*, 8 Cal.App.4th at p. 1114.)  Rather, the evidence presented in opposition to Allied's summary judgment motion

(including plaintiffs' expert declarations) suggested it was fatigue from Villegas's inability to sleep during the day — not fatigue from an excessive workload — that proximately caused the accident. Thus, as in *Depew* and *Lynn*, "we conclude there was an insufficient nexus between [Villegas]'s employment and the accident as a matter of law. The trial court therefore properly rejected the special risk exception to the going and coming rule." (*Lynn*, at p. 1114; see also *Bingener*, *supra*, 44 Cal.App.5th at p. 138.)[2]

The cases upon which plaintiffs rely do not compel a different result. In *Purton v. Marriott Internat., Inc.* (2003) 218 Cal.App.4th 499, an employee consumed alcohol at a work-related event and, while driving a co-worker home, struck another car and killed its driver. (*Id.* at p. 502.) *Purton* concluded "an employer may be found liable for its employee's torts as long as the proximate cause of the injury" — in that case, alcohol consumption — "occurred within the scope of employment." (*Id.* at p. 508.) In *Bussard v. Minimed, Inc.* (2003) 105 Cal.App.4th 798, an employee who had been exposed to pesticides at work went home early, feeling dizzy and lightheaded. On her commute, the employee rear-ended another car. (*Id.* at pp. 801, 806.) *Bussard* held the going and coming rule did not bar liability and observed: "That an employee might not be fit to drive after breathing lingering pesticide fumes for several hours is not such a startling or unusual event that . . . a car accident on [the employee's] commute home was unforeseeable." (*Id.* at p. 806.) Unlike the employees in *Purton* and *Bussard*,

---

[2] We express no opinion on whether working an overnight shift poses a risk of sleep deprivation; we hold only that working a regular overnight shift as a security guard — by itself — is "not the type of excessive workload that makes falling asleep at the wheel" and injuring another motorist " 'a generally foreseeable consequence.' " (*Depew*, *supra*, 63 Cal.App.4th at pp. 489–490.) To conclude otherwise would render the going and coming rule a nullity for night shift workers.

Villegas was not under the influence of an intoxicating or poisonous substance to which she had been exposed at work. And, while Villegas's experts analogized her sleep deprivation to being intoxicated, it was her inability to sleep during her 16 hours of time off that caused her sleep deprivation, not her work as a security guard.

Nor are we persuaded that Villegas's conduct falls within the "special errand" exception to the going and coming rule, which applies "when an employee commits a negligent act while engaged in a 'special errand' or a 'business errand' for the benefit of . . . her employer while commuting." (*Sumrall v. Modern Alloys, Inc.*, *supra*, 10 Cal.App.5th at p. 968, fn. omitted.)[3] Under the special errand exception, an employee is considered within the scope of employment during a commute when she is "on a special errand either as part of [her] regular duties or at a specific order or request of the employer." (*Pierson v. Helmerich & Payne Internat. Drilling Co.*, *supra*, 4 Cal.App.5th at p. 632.) " 'The special [errand] exception requires three factors to be met: (1) the activity is extraordinary in relation to the employee's routine duties, (2) the activity is within the course of the employee's employment, and (3) the activity was undertaken at the express or implied request of the employer and for the employer's benefit.' " (*Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 310.)

Plaintiffs contend the "extra shifts" Villegas worked constituted a special errand. In the workers compensation context, courts have held that requiring an employee to work a double shift *may* — under certain circumstances — constitute a special errand. (E.g., *Safeway Stores, Inc. v.*

[3] While sometimes also referred to as the "special mission" or "business errand" exception (*Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 633, fn. 6), we use the term "special errand." (See, e.g., *Robinson v. George* (1940) 16 Cal.2d 238, 245.)

*Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 537 [employee was in the course of employment while commuting home after working a double shift]; *Lantz v. Workers' Comp. Appeals Bd.*, *supra*, 226 Cal.App.4th at p. 303 [considering whether "mandatory holdover shift . . . was a special [errand] that included the travel home"].)  " 'Workers' compensation decisions can be helpful in determining whether an employer should be vicariously liable, but they are not controlling precedent.' " (*Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 453.)

We need not determine whether working a double shift constitutes a special errand in an action for vicarious liability because Villegas was not asked to work more than an eight-hour shift before the accident, and she had not worked double shifts before the shift preceding the accident.  There was nothing extraordinary about Villegas's work schedule in the days preceding the accident:  Villegas worked only three days in a row before her August 21, 2017 shift.  Nor was there anything extraordinary about Villegas's commute home.  After her shift ended, and as she had done numerous times before, Villegas dropped her mother off at work in the Inner Richmond neighborhood, then drove home to the East Bay.  It was "a normal commute no different in kind than the normal commute to perform the regular duties of [her] employment." (*C.L. Pharris Sand & Gravel, Inc. v. Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 584, 593; *City of San Diego v. Workers' Comp. Appeals Bd.* (2001) 89 Cal.App.4th 1385, 1389 [commute to work "was not a special mission but instead was within the purview of the going and coming rule"].)  On the record before us, the special errand exception is inapplicable.

II.

Plaintiffs also argue the court erred in granting summary judgment because Allied's motion did not address their "separate" cause of action for "independent negligence." This argument has no merit.

The "complaint delineates the scope of issues before a court on summary judgment." (*Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125.) On summary judgment, the defendant's burden is to negate the theories of liability alleged in the complaint. (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289–290.) A defendant is *not* obliged to " ' " ' " 'refute liability on some theoretical possibility not included in the pleadings,' " ' " simply because such a claim was raised in . . . opposition to the motion for summary judgment.' " (*Id.*, at p. 290.) A corollary of this rule is that a plaintiff " ' "cannot successfully resist summary judgment on a theory not pleaded" ' " in the complaint. (*Comunidad en Accion*, at p. 1125; *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3.)

Plaintiffs' complaint alleges four claims: motor vehicle negligence, third party negligence, negligent infliction of emotional distress, and loss of consortium. Plaintiffs contend they alleged a "separate" cause of action for Allied's "independent negligence in hiring, retaining, and supervising" Villegas. Not so. The complaint does not allege any such "separate" cause of action, nor does the complaint aver Allied was liable for negligently hiring, retaining, or supervising Villegas. The complaint's assertion that Allied negligently "required, demanded, scheduled, overworked, ordered and allowed" Villegas to "work excessive hours" — a single sentence in a seven-page complaint — cannot be fairly read to allege a separate claim for independent negligence premised on negligent hiring, supervision, or

retention. The same is true for the complaint's passing reference to Allied's alleged negligent failure to provide transportation for Villegas. (See *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139–1140 [discussing tort of negligent hiring and retention]; CACI No. 426 [listing elements of the tort].) The complaint does not allege a traditional negligence cause of action against Allied. (See *Johnson v. The Raytheon Co., Inc.* (2019) 33 Cal.App.5th 617, 633 [listing elements of an actionable negligence claim].)

Plaintiffs did not raise the issue of Allied's purported "independent negligence" until their opposition to the summary judgment motion. As stated above, a plaintiff may not oppose summary judgment by raising a theory not pleaded in the complaint. " 'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, . . . or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.' " (*Johnson v. The Raytheon Co., Inc., supra,* 33 Cal.App.5th at p. 636.)

Here, plaintiffs did not seek to amend the complaint with their new factual assertion that Allied was liable for negligent hiring, supervision, or retention. Thus, the trial court did not err in granting summary judgment notwithstanding Allied's failure to address plaintiff's purported "independent negligence" claim.[4] Having reached this result, we need not determine whether the cause of action, if alleged, fails as a matter of law.

---

[4] At oral argument, counsel for plaintiffs claimed Allied conceded the complaint alleged a cause of action for independent negligence. We decline to construe a single sentence in Allied's brief as a concession, particularly in light of other statements in that brief asserting the complaint did *not* allege a claim for negligent hiring, retention, or supervision. In any event,

## DISPOSITION

The judgment is affirmed.  Allied is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

---

we are not bound by the purported concession.  (See *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327; *People v. Kim* (2011) 193 Cal.App.4th 836, 847.)

_____

Rodríguez, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Fujisaki, J.


A161190

17

Superior Court of Alameda County, Hon. Paul D. Herbert.

Law Office of Scott Righthand and Scott D. Righthand for appellants.

Wilson Elser Moskowitz Edelman & Dicker, Thomas H. Nienow for respondent Universal Protection Service, LP.