Filed 2/22/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

GAIL M. LYNN, Individually and as
Executor, etc., et al.,

     Plaintiffs and Appellants,

v.

TATITLEK SUPPORT SERVICES,
INC.,

     Defendant and Respondent.

E063585

(Super.Ct.No. CIVBS1200525)

OPINION

APPEAL from the Superior Court of San Bernardino County. Donald R. Alvarez, Judge. Affirmed.

Kristensen Weisberg, John P. Kristensen, David L. Weisberg, Matthew T. Hale; Carpenter, Zuckerman & Rowley, Paul S. Zuckerman and John C. Carpenter for Plaintiffs and Appellants.

Hinshaw & Culbertson, Frederick J. Ufkes and Aji N. Abiedu for Defendant and Respondent.

I

INTRODUCTION

Plaintiffs and appellants Gail M. Lynn (Mrs. Lynn), individually and as executor

1

of the Estate of Brian Griffin Lynn (Mr. Lynn), and Randy Lynn, Mr. and Mrs. Lynn's son, (plaintiffs) appeal from summary judgment entered in favor of defendant and respondent Tatitlek Support Services, Inc. (TSSI) in a wrongful death action.

The sole question raised on appeal is whether TSSI's temporary employee, Abdul Formoli, was acting within the scope of his employment when he caused an automobile accident (the accident), killing Mr. Lynn and seriously injuring Mrs. Lynn. Plaintiffs contend the "going and coming" rule, precluding employer vicarious liability, does not apply because of the nature of Formoli's employment preceding the accident. Because of the remoteness of the jobsite, Formoli's employment required him to undertake a lengthy commute home, after working long hours, over three and a half days. Plaintiffs argue that under such circumstances there is a triable issue of material fact as to whether an exception to the "going and coming" rule applies. Plaintiffs rely on three exceptions: the extraordinary-commute incidental benefit exception, the compensated travel-time exception, and the special risk exception.

We conclude plaintiffs have failed to present evidence supporting these exceptions to the going and coming rule. We therefore affirm the judgment on the ground it is undisputed TSSI was not vicariously liable for the accident under the doctrine of respondeat superior.

II

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from evidence provided in the summary judgment motion and opposition, including declarations and deposition testimony from TSSI

2

operations manager, Mark Munoz, and retired United States Marine Corps Master Gunnery Sergeant, Mark Capese. Capese served as TSSI's project manager for the military exercises Formoli participated in, beginning on August 7, 2011, and ending on August 11, 2011.

*A. Formoli's Employment as a TSSI Role Player*

TSSI is an Alaskan corporation that provides support services for realistic military pre-deployment training at several United States Army and Marine Corps bases throughout the country. TSSI entered into an employment contract with the United States Marine Corps to recruit and hire foreign language role players to participate in military exercises at the United States Marine Corps military base located at Twentynine Palms (the Base). Those exercises included the Mojave Viper mission, beginning on August 7 and ending on August 11, 2011. These exercises provided training of marines before they were deployed to combat in Afghanistan. Around 500 role players were hired on an "as needed" basis for the exercises.

The exercises were intended to provide "real life experience." TSSI recruited role players from Afghan communities located in Fremont and San Diego, California, and Phoenix, Arizona. Although TSSI did not recruit from other areas, some of the role players were from Idaho, Colorado, Nevada, other parts of California, New York, and Florida. They would hear about the jobs by word of mouth. There were two types of role players. One type had to be from the Afghan culture and know the Afghan language. There were also "street walkers," called "Civilian on the Battlefield" role players. They could be Americans who did not know the culture or language.

3

The training missions lasted up to 10 days, with work hours between 10 and 19 hours per day. The role players were on their feet for long periods of time. There were simulated battle scenes. The exercises were physically strenuous, caused fatigue, and were stressful. The role players slept a minimum of five hours per day. The noise level reduced to a reasonably quiet level by 11:00 p.m., which "easily accommodates sleep," according to TSSI operations manager, Mark Munoz.

When hiring role players for a mission, TSSI would ask if the employee was going to drive to/from the jobsite or wanted round-trip bus transportation from Fremont, San Diego or Phoenix. TSSI provided this optional bus service to role players at no charge. The bus service was not provided with the intention of ensuring the role players had safe transportation to the Base. Rather, the bus service was provided because many of the role players did not have personal vehicles and the transportation ensured that the role players would arrive on time.

Before a role player was formally hired and permitted on the Base, the employee was required to pass a TSSI background check and be "in-processed" at TSSI's facility near the Base. After completing the "in-processing," role players were bused to TSSI's on-base location and then sent to their assigned locations on the Base, where the Mojave Viper exercises were conducted. During the exercises, the role players were not allowed to leave their assigned locations and could not act "out of role," except during a rest break. Workers were provided significant periods of downtime during which they could rest and sleep. Role players recorded their work time on a TSSI time card.

4

After the exercises were completed the role players returned to TSSI's on-base facility for "out-processing." The role players returned their costumes and gear used for the exercises, filled out their time cards, and received a meal or snack. They were then transferred by bus to TSSI's nearby off-base facility. The role players were then free to leave by personal vehicle, bus services provided by TSSI, or other transportation.

Formoli was hired by TSSI as a "civilian," "Afghan villager" role player to participate in the exercises at the Base beginning on August 7, 2011. He had not worked for TSSI before. Formoli was 41 years old and lived in Sacramento. He passed TSSI's background check, which included an alcohol and drug test. Formoli's time sheets showed eight work hours on August 7; 17 hours on August 8; 19 hours on August 9; 19 hours on August 10, and eight hours on August 11.

According to Capese, Formoli's work hours were determined pursuant to contract and did not necessarily reflect the number of hours Formoli actually worked. The first day, role players were paid for eight hours, for in-processing and being placed on the Base range for their role playing assignments. After that, role players were required to be on the range participating in military exercises for a specified number of hours a day, such as 17 or 19 hours. During that time, role players might be in their village hut sleeping, or playing cards or Dominos. They might not be physically active during that time. Formoli slept in the same location on the Base range where he participated in the exercises. This would have been the tribal family village where he was assigned to role play. The role players were required to get at least five hours a day of sleep but might get more sleep. Normally, the exercises would last until 10:00 p.m. or 11:00 p.m. Role

5

players would then be free to sleep until 6:00 a.m. the next morning, although at 4:00 a.m., the loud speaker would play the pre-dawn call to prayer.

Formoli chose to drive himself to and from TSSI's Twentynine Palms facility, rather than make use of the bus services provided by TSSI. About 80 percent or 392 of the role players travelled by the buses TSSI provided. None of the role players lived locally in Twentynine Palms, although 15 or 20 lived within 100 miles of the Base. According to Capese, TSSI did not pay Formoli or any other role players for their travel time to or from the Base, regardless of whether the workers drove themselves or took the bus. Role players who used their own cars for transportation were also not reimbursed for their transportation expenses.

Formoli drove from his home in Sacramento to TSSI's Twentynine Palms facility and was in-processed on August 7, 2011. Formoli did not drive his vehicle on the Base. It was parked outside the Base at a TSSI parking lot. From there, a TSSI bus transported Formoli and others to the Base. According to Capese, Formoli was out-processed and departed from the Base and TSSI's facility at approximately 10:00 a.m. on August 11, 2011. Normally the mission ends and the role players finish out in the field at around 7:00 a.m. They are bused back to the out-processing facility to check out and are off the Base by 11:00 a.m. or noon.

The paid work hours on the last day, August 11, were determined by contract, regardless of the hours actually worked. Pursuant to contract, the role players were paid eight hours on the day they were out-processed. Military exercises were not performed that day but were performed the night before. It was possible the exercises could have

6

lasted until after midnight.  Capese did not know if this occurred.  Formoli would have gotten up on August 11, 2011, at 6:00 a.m.  The workers probably did not get breakfast but were given a sack lunch at check out.  They put away their cots, gathered their belongings, and got on the bus transporting them to the check-out facility.  Capese confirmed that, at the time of the accident, Formoli was not engaging in any errand or activity benefitting TSSI or incidental to Formoli's employment with TSSI.

As Formoli was driving home to Sacramento, after completing his job assignment, he crashed into a pickup truck driven by Mr. Lynn.  Formoli's vehicle, a Toyota Solara, burst into flames, fatally incinerating Formoli.  The fire spread to the Lynns' vehicle.  Formoli died at the scene and Mr. Lynn died shortly thereafter from his serious injuries.  Mrs. Lynn, who was a passenger, survived the accident.  The accident occurred on August 11, 2011, at 2:25 p.m., on California Route 247 (SR-247).  Formoli was about five miles south of Barstow and almost 100 miles from TSSI's Twentynine Palms facility.  According to the coroner's toxicology report, at the time of the accident, Formoli's blood alcohol level was .06 percent.

At the time of the head-on collision, Formoli was traveling north in the southbound lane, in the wrong direction of travel, instead of remaining in the northbound lane, which curved to the right.  The collision occurred in the southbound lane, after Formoli crossed over from the northbound lane to the southbound lane and struck the Lynns' vehicle.  Officer Carmichall was dispatched to the accident scene at 2:29 p.m. and arrived at the scene 10 minutes later.  Carmichall determined that the primary cause of the accident was Formoli crossing the double-yellow lines, in violation of Vehicle Code

7

section 21460, subdivision A. Before Mr. Lynn died, he stated that Formoli came into Mr. Lynn's lane at a high rate of speed. Mr. Lynn attempted to turn to the right to avoid crashing but Formoli was traveling too fast. Mrs. Lynn also stated that Formoli crossed over the center yellow lines at a high rate of speed, and collided with the Lynns' truck, which was travelling 55 miles per hour.

Carmichall concluded in his report that, as Formoli traveled northbound, approaching a right curve in the roadway, Formoli "[f]or unknown reasons," allowed his vehicle to cross the solid double yellow lines into the southbound lane. Formoli's vehicle was in the direct path of the Lynns' southbound traveling vehicle, causing a head-on collision in the southbound lane.

B. *Summary Judgment Proceedings*

Plaintiffs filed a wrongful death complaint against Formoli's estate and various other defendants. Plaintiffs added TSSI as a Doe defendant. Plaintiffs amended the complaint several times, with the third amended complaint serving as the operative complaint (complaint). The complaint includes causes of action for wrongful death negligence, alleging Formoli failed to drive in a safe and reasonable manner, resulting in Formoli negligently crossing over the yellow lines on SR-247 and crashing head-on into plaintiffs' vehicle. Plaintiffs' remaining claims are against TSSI, Formoli, and Formoli's ex-wife who owned the vehicle Formoli was driving at the time of the accident.

TSSI filed a motion for summary judgment. TSSI's separate statement of undisputed facts asserted the following facts were undisputed: (1) Before the accident, TSSI had discharged Formoli as an employee; (2) at the time of the accident, Formoli

8

was not engaged in any activity that benefited TSSI; (3) at the time of the accident, Formoli was not engaging in any activity incidental to his employment with TSSI; (4) the military exercises TSSI hired Formoli to participate in as a role player were completed the morning of August 11, 2011; (5) Formoli departed from TSSI's Twentynine Palms facility at approximately 10:00 a.m. on August 11, 2011; and (6) TSSI did not compensate Formoli or any other role player for travel time to or from the Base.

Relying on *Hinman v. Westinghouse Electric Company* (1970) 2 Cal.3d 956 (*Hinman*), plaintiffs argued in their opposition that TSSI was liable under the doctrine of respondeat superior based on the employer special benefit exception to the going and coming rule. Plaintiffs also argued the accident occurred while Formoli was being paid by TSSI for his travel time and therefore TSSI was liable under the respondeat superior doctrine. Plaintiffs' third argument was that a triable issue of fact existed as to whether the special risk exception to the going and coming rule applied, based on TSSI allowing exhausted, sleep deprived role players to drive home after completing their grueling, stressful work assignments.

During oral argument on TSSI's summary judgment motion, plaintiffs argued that a triable issue existed as to whether the incidental benefit and special risk exceptions to the going and coming rule applied. Plaintiffs maintained it was foreseeable a TSSI role player would cause an automobile accident while driving home. Plaintiffs further argued that an employer, such as TSSI, which benefits from employing workers solicited from extended, distant labor markets, should be required to pay for the travel risks inherent in such employees commuting long distances. TSSI requested the trial court strike Dr.

9

Glass's expert opinion declaration on the ground the expert declaration lacked foundation under Evidence Code sections 801 and 802, and Formoli's mental state at the time of the accident was purely speculative.

In a detailed written statement of decision, the trial court granted TSSI's summary judgment motion "on the ground that TSSI has met its prima facie burden of showing that Mr. Formoli was not acting within the course and scope of his employment when he collided with plaintiffs' decedent, shifting the burden of production onto the plaintiffs, and plaintiffs have failed to present evidence sufficient to show the existence of any triable issue of material fact as to the scope of Mr. Formoli's employment." The trial court sustained TSSI's objection to Dr. Glass's expert opinion declaration on the ground that, "although [] it seems possible and even likely that Mr. Formoli was tired when he left Twentynine Palms, Dr. Glass's opinion that his fatigue was the reason Mr. Formoli crossed into oncoming traffic seems to be mere speculation especially in the absence of evidence showing how long it had been since Mr. Formoli had last slept."

III

SUMMARY JUDGMENT

A defendant seeking summary judgment has the burden of showing that a cause of action has no merit by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (*Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 894 (*Moradi*).) Upon the defendant meeting this burden of proof, "'"the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary

10

judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed." . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts [set forth] in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true.'" (*Buxbaum v. Aetna Life & Casualty Co.* (2002) 103 Cal.App.4th 434, 441.)

IV

VICARIOUS LIABILITY

Plaintiffs contend the trial court erred in granting TSSI's summary judgment motion, finding it was undisputed TSSI was not vicariously liable for Formoli's acts under the doctrine of respondeat superior. The trial court concluded there was no evidence that Formoli was acting within the course and scope of employment at the time of the accident. Plaintiffs argue the going and coming rule, which precludes respondeat superior liability, does not apply under several applicable exceptions to the rule. We conclude it is undisputed exceptions to the going and coming rule do not apply.

A. *Incidental Benefit Exception to the Going and Coming Rule*

Plaintiffs argue the incidental benefit exception to the going and coming rule applies. "'Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their

11

employment. . . . However, under the "going and coming" rule, employers are generally exempt from liability for tortious acts committed by employees while on their way to and from work because employees are said to be outside of the course and scope of employment during their daily commute.' [Citation.]" (*Moradi, supra,* 219 Cal.App.4th at pp. 894-895.)

As a matter of public policy, employers are vicariously responsible for losses from employees' torts that inevitably occur in the operation of a business enterprise. Vicarious responsibility for employee torts is one of the imputed costs of production that society as a whole bears through the price of the product or insurance rates, rather than the innocent injured party. (*Hinman, supra,* 2 Cal.3d at pp. 959-960.) However, once employees complete their work day, they ordinarily are not providing any benefit or service to their employer until they begin the next work day, and therefore under the going and coming rule, torts occurring during an employee's commute are no more the vicarious responsibility of the employer than torts committed at an employee's home. (*Id.* at p. 961.) This is because the employment relationship is commonly viewed as "suspended" from the time the employee leaves until he or she returns, or that in commuting the employee is not rendering service to the employer. (*Ibid.*; *Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 602 (*Blackman*).)

Normally the going and coming rule applies in cases where an employee ordinarily works at a particular location and the job duties do not ordinarily include driving on the job. (*Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 809-810 (*Huntsinger*); *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150,

12

157 (*Hinojosa*).)[1]  On the other hand, if the employer expressly or impliedly makes the commute a part of the work day, or derives an incidental benefit from a particular employee's commute beyond that of the other members of the work force, then the employer's vicarious liability will continue during the course of the commute.  (*Id.* at pp. 961-962.)  In order for liability to arise for the use of a personal car, "the benefit must be sufficient enough to justify making the employer responsible for the risks inherent in the travel."  (*Blackman, supra,* 233 Cal.App.3d at p. 604.)

As explained in *Moradi* and *Smith v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 (*Smith*):  "'Under the well established going and coming rule, an employee does not pursue the course of his employment when he is on his way to or from work. . . .  In a number of cases we have established exceptions to this rule, such as those in which the employer defrayed travel expenses . . . and those in which the employee engaged in a special errand for his employer."  (*Moradi, supra,* 219 Cal.App.4th at p. 895, quoting *Smith,* at pp. 815-816, 818, 820.)  For instance, where an "'accident occurred when the employee drove his car to the employer's premises pursuant to the employer's requirement that the employee furnish his own car, we hold that the so-called going and coming rule does not bar coverage.'  [Citation.]  '[T]he employer clearly benefited from [the employee's] bringing the car to work.  Indeed, an employer must be conclusively

---

[1]  Although workers' compensation cases represent a more liberal allocation of liability to an employer for commute injuries and therefore are not controlling, such cases may be instructive to the extent they are based on the principle of identifying an extraordinary employer benefit from an employee's commute.  (*Hinman, supra,* 2 Cal.3d at p. 962, fn. 3.)

13

presumed to benefit from employee action reasonably directed towards the execution of the employer's orders or requirements. An employer cannot request or accept the benefit of an employee's services and concomitantly contend that he is not "performing service growing out of and incidental to his employment."' [Citation.]" (*Moradi,* at p. 895, quoting *Smith,* at pp. 815-816, 818, 820.)

"Generally, whether an employee is within the scope of employment is a question of fact; however, when the facts of a case are undisputed and conflicting inferences may not be drawn from those facts, whether an employee is acting within the scope of employment is a question of law. [Citation.] [¶] Exceptions are made to the going-and-coming rule when the employee's trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force. [Citation.]" (*Blackman, supra,* 233 Cal.App.3d at p. 602.)

In the instant case, the accident occurred while Formoli was driving home after completing his temporary job as a TSSI role player. It is undisputed that Formoli caused the head-on crash. Plaintiffs argue TSSI is vicariously liable for Formoli's negligent acts even though the accident occurred after Formoli had completed his job assignment and was driving home. Plaintiffs contend the going and coming rule does not apply under the incidental benefit exception because TSSI benefited from role players, such as Formoli, commuting unusually long distances to the jobsite, which was in a remote location.

We conclude plaintiffs have not provided evidence establishing that the incidental benefit exception to the going and coming rule applies. Even though Formoli had a long commute, there is no evidence that Formoli's use of a personal vehicle was a condition of

14

employment or that Formoli agreed to make his personal vehicle available as an accommodation to TSSI, with TSSI reasonably relying upon Formoli using it during his employment.

Citing *Hinman, supra,* 2 Cal.3d 956, plaintiffs argue TSSI is vicariously liable under the incidental benefit exception to the going and coming rule because TSSI benefited from hiring role players from an expanded labor market, thereby requiring role players such as Formoli to travel lengthy distances to work at the Base. Plaintiffs assert that this benefit to TSSI created the inherent risk that role players would get in vehicle accidents during their lengthy commutes. Plaintiffs' reliance on *Hinman* for the proposition the going and coming rule is inapplicable is misplaced.

The court in *Hinman* recognized that *if* an employee commute confers "an incidental benefit to the employer, not common to commute trips by ordinary members of the work force," respondeat superior liability can extend to accidents during the trip. (*Hinman, supra,* 2 Cal.3d at p. 962.) The *Hinman* court explained that, when an employer chooses to further its business interest by enlarging the geographical pool from which to draw its labor force by paying its employees for their commute, and this business benefit also creates a concomitant increased risk of accidents by hiring employees with lengthy commutes, the lengthy employee commutes benefit the employer. Under these circumstances, *Hinman* concluded the employer should also be responsible for the risks inherent in the choice of inducing increased commuting.

The court in *Hinman* explained in this regard that "There is a substantial benefit to an employer in one area to be permitted to reach out to a labor market in another area or

15

to enlarge the available labor market *by providing travel expenses and payment for travel time.* It cannot be denied that the employer's reaching out to the distant or larger labor market increases the risk of injury in transportation. In other words, the employer, *having found it desirable in the interests of his enterprise to pay for travel time and for travel expenses and to go beyond the normal labor market or to have located his enterprise at a place remote from the labor market*, should be required to pay for the risks inherent in his decision." (*Hinman, supra,* 2 Cal.3d at p. 962; italics added.) The *Hinman* court concluded that, by agreeing to pay employee travel time and expenses associated with commuting, the employer made the travel time part of the employee's working day and the employee should be treated as an employee during the travel time. (*Ibid.*)

*Hinman* is factually distinguishable from the instant case. In *Hinman*, the plaintiff, a policeman, who was standing on the freeway center divider, was struck by the defendant's employee. The employee was driving home from work on company time. He worked as an elevator constructor's helper. He drove directly to and from the jobsite, rather than to the defendant's office. The employee was paid for "carfare," travel expenses, and travel time. The court in *Hinman* rejected application of the "going and coming" rule and concluded the respondeat superior doctrine applied because, at the time of the accident, the employee was on company time and was engaged in the very conduct contemplated by the employer. (*Hinman, supra,* 2 Cal.3d at p. 960.)

Here, as discussed in greater detail below, there was no evidence that Formoli's employer, TSSI, compensated Formoli for his travel time or expenses. There was also no

16

evidence that during his commute, Formoli was engaged in conduct benefiting TSSI. Formoli was simply driving home after completing his temporary job assignment. Furthermore, even though TSSI's role players were hired from an extended labor market and were generally required to commute long distances to the Base, evidence established that the role players were not required to commute by personal vehicle. The means by which they travelled to and from the jobsite was "a matter of complete indifference" to TSSI (*Moradi, supra,* 219 Cal.App.4th at p. 897, quoting *Huntsinger, supra,* 22 Cal.App.3d at p. 810), and required only a single round-trip commute. TSSI left to the discretion of the workers the manner of transportation. Role players could commute by personal car, bus, or any other means of transportation they so choose.

Plaintiffs argue Formoli's commute was not "ordinary" because it was lengthy, and the incidental benefit exception does not require employer payment of employee travel time and expenses under *Hinman*. While payment of travel expenses is not required under *Hinman*, a lengthy, one-time, round-trip commute for a temporary job in and of itself is not a sufficient basis for applying the incidental benefit exception to the going and coming rule, particularly when TSSI provided optional, free transportation by bus. Formoli could have used the bus services offered by TSSI, to and from Fremont, for the majority of his lengthy commute. Formoli nevertheless chose to drive himself. There thus was no removal of the means of transit from Formoli's choice or convenience, with placement of transit within the ambit of the employer's choice or convenience. (*Moradi, supra,* 219 Cal.App.4th at p. 899; *Hinojosa, supra,* 8 Cal.3d at p. 157.)

17

Furthermore, TSSI did not induce its employees to commute long distances by personal vehicle. TSSI recruited employees from only three areas, San Diego, Fremont, and Phoenix, communities known to have the type of individuals who would qualify for the particular role playing jobs TSSI was offering. In the three areas where TSSI recruited employees, TSSI offered free bus transportation. It is undisputed that Formoli was not from one of the three areas where TSSI recruited employees. Any benefit TSSI received from reaching out to a distant labor market did not apply to Formoli.

It is unrefuted the incidental benefit exception does not apply here. The undisputed evidence shows that TSSI did not require Formoli to use his personal vehicle to perform his job responsibilities; TSSI did not require Formoli to drive to or from the jobsite; TSSI did not recruit employees from Sacramento, where Formoli lived; Formoli had the option of using bus services provided by TSSI for most of his commute; Formoli had discretion on when, where and how to commute to the jobsite; Formoli had completed his temporary employment assignment at the time of the accident; Formoli had left the jobsite over two hours before the accident; and the accident occurred nearly 100 miles from the jobsite. Under these circumstances, the relationship between Formoli's employment and driving home after completing his job assignment was simply too attenuated an employer benefit to require TSSI to bear the risk of an accident during Formoli's commute home. (*Tognazzini v. San Luis Coastal Unified School Dist.* (2000) 86 Cal.App.4th 1053, 1058-1060; *Blackman, supra,* 233 Cal.App.3d at pp. 602-604.)

*Hinman* does not stand for the proposition that the incidental benefit exception to the going and coming rule applies whenever an employee has a lengthy commute. In this

day and age of employees commuting long distances to work or telecommuting with an occasional lengthy commute to their employer's office, employer liability based solely on an employee's lengthy commute would place an unreasonable, excessive burden on the employer, and ultimately on the community at large. (*Hinman, supra,* 2 Cal.3d at p. 960.) Any benefit to TSSI from the lengthy commute of employees such as Formoli does not amount to a greater benefit than that derived from employee commute trips by ordinary members of the work force. (*Id.* at p. 962.) This is even more the case here where TSSI minimized the risk of the long-distance commute by providing employees with free long distance bus transportation from the communities where TSSI recruited its employees. TSSI therefore should not be held liable for employees, such as Formoli, who were not from areas where TSSI recruited employees and who chose to commute a lengthy distance by personal vehicle.

Formoli's commute home was not an instance "where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Hinman, supra,* 2 Cal.3d at p. 962; *Huntsinger, supra,* 22 Cal.App.3d at p. 810.) It was Formoli's personal activity which caused the accident, which did not occur within the course and scope his employment. Formoli's negligent activity during his commute home was not part of the employer-employee relationship required for respondeat superior liability. (*Sunderland v. Lockheed Martin Aeronautical Systems Support Company* (2005) 130 Cal.App.4th 1, 5.)

*B. Compensation for Travel Time*

As noted above, courts have excepted from the going and coming rule those cases in which the employer and employee have entered into an employment contract in which the employer agrees to pay the employee for travel time and expenses associated with commuting, thus making "the travel time part of the working day by their contract." (*Hinman, supra,* 2 Cal.3d at p. 962.) Plaintiffs contend the trial court erred in finding it was undisputed that TSSI did not compensate Formoli for his travel time during his commute home, when the accident occurred. Plaintiffs argue there was evidence that Formoli was paid for eight hours of work on the day of the accident. There was also evidence his working time began when he started out-processing at 7:00 a.m. on August 11, 2011, and he left the Base at around 10:00 a.m. Plaintiffs therefore conclude that because he was paid for eight hours of work, Formoli was paid for his travel time after he left the Base, including when the accident occurred.

But this unfounded theory that TSSI paid Formoli for his travel time, is based on pure speculation, in the absence of any factual support. Furthermore, there is undisputed evidence to the contrary, that Formoli was not being paid for his travel time when the accident occurred. Capese, TSSI's project manager for the exercises, stated that, although the role players were paid for working eight hours their last day, this was pursuant to contract and not a reflection of the actual hours worked. Role players were paid eight hours the last day for out-processing pursuant to contract. Formoli actually worked from the time he got up until he left the Base. Capese confirmed that Formoli chose to drive himself to and from the Base, rather than make use of the bus services

20

provided by TSSI.  According to Capese, TSSI did not pay Formoli or any other role player for their travel time or travel expenses, regardless of whether the workers drove themselves or used other transportation.  A TSSI personnel file print-out containing employment information regarding Formoli, shows that Formoli was employed as a role player for the Mojave Viper mission, and worked August 7 through August 11, 2011.  The print-out states that Formoli did not receive "travel pay."

We recognize that, when ruling on TSSI's summary judgment motion, neither the trial court nor this court may weigh plaintiffs' evidence or inferences, as if sitting as the trier of fact.  The trial court may not grant TSSI's summary judgment motion "based on inferences . . . if contradicted by other inferences or evidence that raise a triable issue as to any material fact."  (Code Civ. Proc., § 437c, subd. (c).)  Furthermore, the court may not grant summary judgment "based on any evidence from which such inferences are drawn, if so contradicted.  That means that, if the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendants' motion."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

All of the evidence presented by plaintiffs and TSSI, and all of the inferences drawn therefrom, establish that TSSI did not compensate Formoli at the time of the accident.  The trial court therefore appropriately found that the *Hinman* exception to the going and coming rule did not apply.  The undisputed shows that, although TSSI paid Formoli for eight hours of work on August 11, 2011, this did not reflect the actual time he worked that day, and there is no evidence that TSSI paid Formoli for working after he

21

left the Base or for his travel time or expenses. Concluding otherwise would constitute pure, unfounded speculation.

## C. The Special Risk Exception to the Going and Coming Rule

Plaintiffs argue a triable issue of fact exists as to whether the work-related, special risk exception to the going and coming rule applies. Plaintiffs base their contention on evidence that, when Formoli left the Base the morning before the accident, he was exhausted and sleep deprived from working as a role player. Plaintiffs cite evidence Formoli worked at least 63 hours over three and a half days, before beginning his 500-mile drive home. The trial court rejected plaintiffs' contention the special risk exception applied on the ground plaintiffs did not provide evidence of when Formoli last slept before leaving the Base.

## 1. The Work-Related Special Risk Doctrine Law

The work-related, special risk exception to the going and coming rule "applies when an employee endangers others with a risk arising from or related to work. In determining whether such danger arises from or is related to work, case law applies a foreseeability test. Our Supreme Court describes this type of foreseeability, which is different from the foreseeability of negligence, as employees' conduct that is neither startling nor unusual. '"One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity."'" (*Bussard v. Minimed, Inc.* (2003) 105 Cal.App.4th 798, 804 (*Bussard*).) The foreseeability test "'reflects the central justification for respondeat superior; that losses fairly attributable to an enterprise—those which foreseeably result

22

from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business.' [Citation.]" (*Id.* at pp. 804-805.)

Courts have applied this foreseeability test when considering the special risk exception, where employees have caused car accidents on the way home after drinking alcohol at work. Courts have found a sufficient link between drinking and car accidents, concluding such collisions are neither startling nor unusual, and thus foreseeable under respondeat superior. (*Bussard, supra,* 105 Cal.App.4th at p. 805; see *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792, 803-804 (*Childers*); *Harris v. Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157, 164.)

Respondeat superior liability under the special risk exception "'is properly applied where an employee undertakes activities within his or her scope of employment that cause the employee to become an instrumentality of danger to others even where the danger may manifest itself at *times and locations remote from the ordinary workplace.*'" (*Bussard, supra,* 105 Cal.App.4th at p. 805-806, quoting *Childers, supra,* 190 Cal.App.3d at pp. 804-805.) Where the risk of injury is created by the enterprise, within the scope of the employee's employment, and it proximately causes the injury, the cost of injury is imposed upon the enterprise. (*Bussard,* at p. 805; *Childers,* at p. 805.)

2. *Analysis*

Here, plaintiffs have not provided evidence there was a foreseeable risk of third party injury from a car accident created by Formoli's employment. There was also an absence of evidence Formoli's fatigue from working as a role player proximately caused the accident. There is no evidence supporting a reasonable finding that Formoli did not

23

receive adequate sleep such that he was incapable of driving safely after leaving the Base. In other words, plaintiffs have not provided any admissible evidence that Formoli's employment was a substantial factor in causing or contributing to the accident. The accident occurred where the highway curved to the right, whereas Formoli drove straight, resulting in Formoli crossing over the center line into the southbound lane and crashing head-on into the plaintiffs' vehicle. Whether Formoli failed to follow the curve to the right because of fatigue is pure speculation, particularly when there was no evidence of how much sleep he received the night before leaving the Base and he was found to have had a blood alcohol level of .06 percent. The police report states that Formoli crossed the center divider line "[f]or unknown reasons."

Although plaintiffs submitted evidence Formoli worked long hours and the work was stressful and could be physically and mentally demanding, there was undisputed evidence that TSSI implemented procedures and rules intended to ensure that role players received adequate rest and uninterrupted sleep while participating in the military exercises. For instance, role players, such as Formoli, were required to receive at least five hours of uninterrupted sleep each night, and were also given rest breaks. The evidence also indicates that normally role players could go to bed and sleep at around 10:00 p.m. or 11:00 p.m., when the noise level was required to subside, and role players were not required to get up the following morning until 6:00 a.m. There is no evidence Formoli was prevented from sleeping during these hours, particularly the night before his commute home.

24

There is thus no evidence Formoli was unfit to drive because of work-related fatigue or evidence this was a substantial factor in causing or contributing to the accident. Therefore a reasonable trier of fact could not find that the accident was a generally foreseeable consequence of Formoli's employment as a role player. There being a lack of evidence of an employer-caused driver impediment (fatigue) or that such impediment proximately caused the accident, we conclude the trial court appropriately granted TSSI's summary judgment motion. Evidence of Formoli's work hours and activities alone are not enough to raise a triable issue of fact that TSSI was vicariously liable based on the special risk exception to the going and coming rule.

In *Depew v. Crocodile Enterprises, Inc.* (1998) 63 Cal.App.4th 480 (*Depew*), the court rejected the special risk exception, which the plaintiffs argued applied based on evidence a restaurant employee worked long hours and then, after leaving work, fell asleep at the wheel. The plaintiffs claimed respondeat superior liability against the restaurant based on the special risk exception to the going and coming rule. The plaintiffs argued the employee's work-related fatigue caused the employee to be unfit to drive. The employee had worked a double shift lasting 17.5 hours; then took a 16-hour break; worked another six hours; and then after leaving work, caused a fatal car accident. The employee admitted several times to investigating officers that he fell asleep at the wheel. The *Depew* court rejected the special risk exception as a matter of law on the ground the employee's work schedule did not create a special risk that he would injure or kill someone by falling asleep while driving home.

25

The *Depew* court reasoned there was an insufficient nexus between the employee's employment and the plaintiff's death because the employee had a 16-hour break between work shifts, followed by six hours of work. The *Depew* court explained that this "is not the type of excessive workload that makes falling asleep at the wheel and killing another driver 'a generally foreseeable consequence' of operating a restaurant. [Citation.] This type of accident was not the '". . . *inevitable* toll of a lawful enterprise.'" [Citation.] Nor did Depew's death fall into the category of 'injuries that "'as a practical matter are sure to occur in the [restaurant business].'"' [Citation.]" (*Depew, supra,* 63 Cal.App.4th at p. 490.)

Although *Depew, supra,* 63 Cal.App.4th 480, is factually distinguishable, it is instructive in demonstrating that there must be evidence the employee's fatigue was caused by an excessive workload, making falling asleep while driving a foreseeable consequence of the employee's job. Here, there was no evidence of this, while there was evidence TSSI took measures to ensure role players had sufficient rest and uninterrupted sleep each night. In addition, there was no evidence as to how long Formoli slept the night before the accident, no evidence he was unfit to drive because of fatigue, and, more importantly, no evidence fatigue from his employment conditions proximately caused the accident. As in *Depew*, we conclude there was an insufficient nexus between Formoli's employment and the accident as a matter of law. The trial court therefore properly rejected the special risk exception to the going and coming rule.

26

*3. Admissibility of Dr. Glass's Declaration*

Plaintiffs argue the trial court erred in excluding Dr. Glass's declaration, which plaintiffs contend provided evidence that Formoli's work activities caused Formoli to be overly fatigued, and this was a substantial factor in causing the accident. The trial court correctly sustained TSSI's evidentiary objection to Dr. Glass's expert opinion declaration on the grounds the declaration lacked foundation under Evidence Code sections 801 and 802, and Formoli's mental state at the time of the accident was purely speculative.

The trial court may strike or dismiss an expert declaration filed in connection with a summary judgment motion when the declaration states expert opinions that are speculative, lack foundation, or are stated without sufficient certainty. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123.) Dr. Glass's expert opinion declaration is deficient for all of these reasons. His declaration fails to state any expert opinion based on matters of a type reasonably relied upon in forming a medical opinion. (*Ibid.*) Instead, his declaration reflects that he based his opinions as to Formoli's condition at the time of the accident and the cause of the accident on assumptions and speculation. An expert's opinion "'may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]'" (*Ibid.*, quoting *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.)

As stated in Evidence Code section 801: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

Dr. Glass provides the following generic, commonly known view among the general public that "long work hours at a stressful job leads to reduced sleep in both time and quality and; with the absence of an adequate recovery period, fatigue results. Furthermore, it is generally accepted in medicine that driving while fatigued is dangerous. Among other problems, fatigued drivers have slowed reaction times and fall asleep at the wheel. Fatigued drivers are less precise in their driving and fail to remain in their lane of travel. Driving while fatigued is dangerous and, especially at highway speeds, can be fatal." He adds that "It is generally accepted in medicine, of course, that consumption of alcohol prior to driving can be dangerous. It is also generally accepted alcohol consumption compounds the dangerousness of fatigued driving."

Dr. Glass's declaration states conclusions, without stating any medical or scientific bases for reaching his opinions. For instance, without knowing how many hours Formoli slept while at the Base, including the night before the accident, Dr. Glass states that

28

Formoli was fatigued at the time of the accident. Dr. Glass also concludes Formoli's fatigue was the cause of the accident, whereas this was nothing more than pure speculation. Furthermore, Dr. Glass's declaration states opinions that rest on common knowledge rather than on matters of a type reasonably relied upon in forming a medical opinion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.) His opinions also overlook evidence that TSSI took measures to ensure that role players such as Formoli received adequate sleep. Formoli may have been tired when he left the Base on August 11, 2011, but there is no evidence that he could not safely drive because of fatigue or that such fatigue substantially caused or contributed to the accident. The trial court therefore properly sustained TSSI's objection to Dr. Glass's declaration and did not consider it when ruling on TSSI's summary judgment motion.

V

DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


MILLER
J.

29