Filed 5/18/20 (opinion on rehearing)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| DIANE LOWERY, as Successor, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KINDRED HEALTHCARE<br>OPERATING, INC., et al.,<br><br>    Defendants and Respondents. | A153421<br><br>(Contra Costa County<br>Super. Ct. No. C1402354) |

Ruth Goros filed this action shortly before her death alleging, among other things, that defendants Kindred Healthcare Operating, Inc. and Care Center of Rossmoor, LLC violated the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) by failing to timely obtain medical treatment for her after she suffered a stroke while a patient at their nursing home. After Ms. Goros's death, her daughter plaintiff Diane Lowery substituted in as successor in interest and amended the complaint to add a cause of action for wrongful death. Thereafter defendants obtained summary judgment, predicated on the trial court's exclusion of the opinion of plaintiff's expert on the issue of causation. We conclude that the court properly sustained the objections to the expert's opinion and shall affirm the judgment.[1]

_____

[1] Plaintiff's notice of appeal purports to appeal the order granting summary judgment, which is not an appealable order, so that plaintiff's notice is premature. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.)

## Background

Plaintiff's second amended complaint alleges causes of action for elder abuse, willful misconduct, fraud, battery and wrongful death. Defendants moved for summary judgment on the ground that each cause of action was without merit. On appeal, plaintiff challenges only the court's ruling with respect to the causes of action for elder abuse and wrongful death. Accordingly, we focus on the allegations of the complaint relating to those two causes of action.

On December 26, 2012, plaintiff's then 92-year-old mother was admitted as a patient at a nursing home operated by defendants and that at an unascertained time on January 2 or 3, Ms. Goros suffered an ischemic stroke. The complaint alleges that defendants "failed to recognize, respond, notify a physician and get Ms. Goros to an acute care hospital for treatment" for the stroke. Moreover, defendants allegedly "attempted to prevent family members from discovering the medical condition of Ms. Goros" and "prevented family members from obtaining emergency acute care treatment for Ms. Goros." Defendants' actions and failures to act allegedly caused "Ms. Goros to suffer permanent and irreversible brain damage" which ultimately caused her death approximately two years later.

Defendants moved for summary judgment on the ground, among others, that plaintiff could not establish causation. With respect to the elder abuse claim, defendants argued that plaintiff could not show that defendants' conduct caused the stroke or that any delay in obtaining treatment affected the outcome of Ms. Goros's medical condition. With respect to the cause of

---

However, "[i]n the interest of justice and to avoid delay, we construe the order granting summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from such judgment." (*Ibid.*)

2

action for wrongful death, defendants argued plaintiff cannot establish that any act or omission by defendant caused Goros's death.

In support of their motion, defendants submitted a declaration by Bruce Adornato, M.D., a neurologist with over 30 years of experience. Adornato opined that no act of defendants caused the stroke and that the time that elapsed between the stroke and Goros's ultimate arrival at the hospital had no bearing on the outcome. According to Adornato, Ms. Goros's stroke was not preventable and was caused by her atrial fibrillation. Adornato explained that "[o]ne of the major risk factors associated with atrial fibrillation is that it causes the heart to form intracardiac blood clots that can be ejected into the circulation, causing stroke and other types of embolic ischemia in vital organs." He also opined that given Ms. Goros's age and significant medical co-morbidities there was no way to reverse the effects of the clot once the stoke occurred. Adornato opined that Ms. Goros was not a candidate for tissue plasminogen activator (TPA) to dissolve the clot and that "even if the stroke had occurred within the acute hospital witnessed and recognized by doctors as it occurred, medical intervention to reverse the stroke was not medically possible."

In opposition to the motion, plaintiffs submitted the declaration of Lawrence S. Miller, M.D., "an expert in physical medicine, rehabilitation, geriatrics and pain disorders." In a conclusory fashion, Miller claimed that the stroke was not caused by atrial fibrillation, but he did not identify its cause. He opined that "Ms. Goros was a candidate for TPA" and that TPA given within three hours of the stroke "would have provided the opportunity to have the effects of the stroke dramatically reduced and the severity of the stroke would not have contributed to the cause of her death like it did in this instance." He also opined that the failure of the nursing home staff "to

3

immediately transfer Ms. Goros to an acute care hospital after exhibiting symptoms of an ischemic stroke was grossly negligent and constituted elder abuse."

Defendants objected to Miller's declaration on the grounds that as an expert on physical medicine and rehabilitation he was not qualified to render an expert opinion on the causation of a stroke and that his opinions were conclusory and speculative. The objection states, among other things, that "the testimony includes conclusory statements without any foundation for their reasoning. The witness states that he is a physiatrist, focusing on the musculoskeletal system, but provides no description of education, experience, training, skill, or knowledge regarding neurology, or any subject within the discipline. Without such information, it is impossible to determine whether the witness qualifies as an expert on the subjects on which he proffers opinions."

The trial court sustained the objection and found that Miller's "conclusory expert opinion is deficient to raise a triable issue of fact as to causation." The court explained, "Dr. Miller, a physiatrist, states that in his opinion the cause of the ischemic stroke cannot be traced back to atrial fibrillation. Dr. Miller has not explained how his training and experience qualifies him to give an opinion on neurological events such as the cause of an ischemic stroke. He cites no reasoning for this opinion. He also opines, based on his experience and documented medical literature, Ms. Goros was a candidate for TPA. He does not address the specific assertion of Dr. Adornato that given her age and co-morbidities she was not a candidate." Ultimately, the court found that Miller was not qualified to give an expert opinion on whether Ms. Goros would have been a candidate for TPA.

4

**Discussion**

Under Code of Civil Procedure section 437c, subdivision (c), "summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] As applicable here, moving defendants can meet their burden by demonstrating that 'a cause of action has no merit,' which they can do by showing that '[o]ne or more elements of the cause of action cannot be separately established . . . .' [Citations.] Once defendants meet this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.)

"On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citation.]' [Citation.] Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims." (*Nazir v. United Airlines, Inc.*, *supra*, 178 Cal.App.4th at p. 253.) "We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] However, to defeat the motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805.)

Here, plaintiff does not dispute that defendants met their burden in moving for summary judgment and that the burden shifted to her to establish a triable issue of fact as to the element of causation. She contends that Dr. Miller's declaration created a triable issue of fact as to that issue and that

5

the court's exclusion of his declaration violated the Supreme Court's holding in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*).

In *Sargon*, the Supreme Court repeated the well-established rule that we review a trial court's ruling "excluding or admitting expert testimony for abuse of discretion." (*Sargon, supra,* 55 Cal.4th at p. 773.) The court recognized that trial courts have an obligation to "exclude unreliable evidence" but also cautioned that "due to the jury trial right, courts should not set the admission bar too high." (*Id*. at p. 769.) The court explained, "under Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative. . . . . [¶] But courts must also be cautious in excluding expert testimony. The trial court's gatekeeping role does not involve choosing between competing expert opinions. . . . [T]he gatekeeper's focus 'must be solely on principles and methodology, not on the conclusions that they generate.' " (*Sargon,* at pp. 771-772.)

Contrary to plaintiff's argument, the trial court did analyze Dr. Miller's declaration within the boundaries *Sargon* established. The court correctly observed that Miller failed to provide any basis for his opinions. (See *Lynn v. Tatitlek Support Services, Inc*. (2017) 8 Cal.App.5th 1096, 1115 ["The trial court may strike or dismiss an expert declaration filed in connection with a summary judgment motion when the declaration states expert opinions that are speculative [or] lack foundation."]; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 [" 'An expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has

6

no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' "].)

Plaintiff suggests that "Dr. Miller's declaration clearly states what underlying facts he relied [on] and why the underlying facts led to his conclusion" that if Ms. Goros had received TPA within the first few hours of suffering the stroke "she would have had a chance at reversing the effects of her stroke." But Miller's brief two-page declaration provides no such explanation. The declaration states only that "his opinion is based on his experience and documented medical literature." The vague reliance on "documented medical literature" is insufficient and stands in stark contrast to Adornato's declaration which identifies the specific medical literature and the specific contents of that literature on which he relied. (*San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 964 ["The plain language of *Sargon* dictates that a trial court exercise its gatekeeping function by considering the matter or information an expert actually relied on in reaching an opinion."]; *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 229 ["Without at least some minimal basis, explanation, or reasoning, [medical expert's] conclusions as to causation in his May declaration had no evidentiary value."].)

Moreover, plaintiff cites no evidence in the record contradicting the court's finding that Dr. Miller did not have the education or experience to render an opinion about the cause or treatment of Ms. Goros's stroke. This ground independently supports the exclusion of Miller's declaration. Evidence Code section 720, subdivision (a) provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill,

experience, training, or education must be shown before the witness may testify as an expert." In *People v. Hogan* (1982) 31 Cal.3d 815, 852, disapproved on other grounds in *People v. Cooper* (1991) 53 Cal.3d 771, 836, the court held that "the qualifications of an expert must be related to the particular subject upon which he is giving expert testimony. Qualifications on related subject matter are insufficient." The trial court recognized that Dr. Miller had "a great deal of expertise in the area of physical medicine, given his tenure at UCLA and his publications" but that "those types of doctors come in after [the stroke]. They're not the ones that are issuing opinions . . . on things that a neurologist would have to do." Plaintiff fails to show that Dr. Miller's qualifications extend to the specific opinions he expressed here. Having reviewed Dr. Miller's curriculum vitae, impressive as it may be, we find no abuse of discretion in the court's ruling that his expertise does not relate to the matters on which he opined.

Finally, plaintiff argues that the court should have afforded her the opportunity to submit a supplemental declaration to augment the foundation for Miller's opinions. At the hearing, plaintiff sought leave to file a supplemental declaration only to clarify why Miller is qualified to offer opinions in the field of neurology. She did not request leave to allow Miller to provide the foundational evidence and reasons for his conclusory opinions. In any event, defendants' objections to the declaration on these grounds were submitted more than a month before the hearing, providing ample time for plaintiff to have filed a motion for a continuance under Code of Civil Procedure section 437c, subdivision (h). Under the circumstances, the court did not abuse its discretion in refusing plaintiff's last minute request for leave to file a supplemental declaration.

Based on the record before it, the court properly granted defendants' motion for summary judgment.

## Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

Trial court:                            Contra Costa County Superior Court

Trial judge:                          Honorable Steve Austin

Counsel for Plaintiff and         Thomas M. Papez
Appellant:

Counsel for Defendants and      J SUPPLE LAW, A Professional Corporation
Respondents:                    John L. Supple
                                        Jodie Feusner
                                        Robert Sanford

A153421